**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| MAXIM SOLUTIONS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Cause No. 1:09-cv-98 |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| CENTURY FOODS INTERNATIONAL, LLC | ) | |
| and HORMEL FOODS CORP., | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

COMES NOW plaintiff, Maxim Solutions, LLC ("Maxim"), by and through counsel, and for its Complaint against defendants Century Foods Int'l, LLC ("Century") and Hormel Foods Corp. ("Hormel") states as follows:

## NATURE OF THE ACTION

1.      This is an action in diversity for damages arising out of lost food product entrusted to defendants for processing.

## PARTIES

2.      Plaintiff Maxim is a limited liability company organized under the laws of the State of Nevada, having a principal place of business in Cape Girardeau County, Missouri.

3.      Upon information and belief, Century is a limited liability company organized under the laws of the State of Delaware with a principal place of business in the State of Wisconsin.

4.      Upon information and belief, Hormel is a corporation organized under the laws of the State of Delaware with a principal place of business in the State of Minnesota.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332 in that there is complete diversity between the parties and the amount in controversy, exclusive of interest and costs, is in excess of $75,000.

6.     This Court has personal jurisdiction over Century in that Century entered into a contract that is the subject matter of this lawsuit where the place of contacting was within this District; that the performance of the contract called for Century to process goods and subsequently ship the same to this District; and that upon information and belief, Century regularly does business in this District and offers its goods and services to customers within this District.

7.     This Court has personal jurisdiction over Hormel in that upon information and belief, Hormel regularly does business in this District and offers its goods for sale within this District; and in that Hormel registered to do business in the State of Missouri.

8.     Venue is proper in this District under 28 U.S.C. § 1391(a) in that all defendants are subject to personal jurisdiction in this District and that a substantial part of the events giving rise to this claim occurred in this District.

## FACTS COMMON TO ALL COUNTS

9.     Maxim is in the business of providing turnkey manufacturing, processing, and packaging solutions to companies in the dietary supplement and health foods industry.

10.     Upon information and belief, Century is a wholly owned subsidiary of Hormel, but also describes itself as "a division of Hormel Foods Corp."

11.     Century is in the business of providing contract food manufacturing for third parties.

12.     One such service offered by Century is known as agglomeration, which is the process of producing a free-flowing, dust-free powder from substances such as dried milk or mild-derived protein powders by moistening the powder with droplets of water and then redrying in a stream of air, resulting in a powder ("agglomerates") that can readily be wetted and dissolved in liquid.

13.     On or about November 17, 2008, Maxim and Defendants entered into a contract for Defendants to agglomerate one truckload of 90% whey protein isolate (hereinafter "WPI90"), wherein Maxim had the WPI90 shipped directly from its vendor to Defendants.  Defendants were to agglomerate the WPI90 and then ship it to Maxim.

14.     As part of the November 17, 2008 contract, Defendants were permitted no more than 1% loss of the WPI90 during processing.

15.     Approximately 41,270 pounds of WPI90 was purchased by Maxim and shipped to Defendants for agglomeration under the November 17, 2008 contract.

16.     Defendants agglomerated the aforementioned WPI90 and shipped to Maxim approximately 38,094 pounds of agglomerated WPI90, which is approximately 2,763 pounds less than Defendants was obligated to ship to Maxim under the contract, resulting in a direct loss of $12,422.92 to Maxim, as well as lost profits on the same in the amount of $1,242.29.

17.     On or about December 29, 2008, Maxim and Defendants entered into a contract for Defendants to agglomerate a shipment of whey protein concentrate ("WPC") under similar terms to the November 17, 2008 contract for WPI90.

18.     A truckload of WPC was shipped to Defendants for agglomeration and was tested before hand for contaminants such as bacteria.  All test results were within normal specifications.

19.     After Defendants agglomerated the WPC, testing showed elevated levels of bacteria in the processed WPC which made it unfit for human consumption.

20.     Defendants agreed to find a buyer for the processed WPC (who could use the same for non-food purposes), and to reimburse Maxim for the amount Maxim paid for the same, which was $38,095.49.

21.     On or about July 10, 2009, Defendants issued a check to Maxim which purported to be for reimbursement of the ruined WPC, but from which Defendants made several unauthorized deductions, resulting in a check for $19,764.42 – far less than what Defendants had agreed to pay.

22.     The loss of the WPC shipment resulted in lost profits to Maxim in the amount of $3,809.55.

23.     On or about April 20, 2009, Maxim and Defendants entered into a contract for Defendants to agglomerate a truckload of WPI90 under similar terms to that of the earlier contracts.

24.     Approximately 41,270 pounds of WPI90 were shipped to Defendants for agglomeration under the April 20, 2009 contract.

25.     On or about May 11, 2209 Defendants shipped samples to Maxim of what it represented to be the agglomerated WPI90 under the contract.

26.     Laboratory testing revealed that the samples sent to Maxim were not of the same protein that was shipped to Defendants and were, in fact, an inferior WPI.

27.     Defendants refuse to inform Maxim as to the whereabouts of the WPI90 that Maxim purchased for the April 20, 2009 contract, and further, refuses to acknowledge that it

attempted to substitute an inferior quality WPI for the product that Maxim had shipped to Defendants.

28.     Defendants further refuse to reimburse Maxim for the amount that Maxim had invested in the WPI90 for the April 20, 2009 contract, which is $142,652.70.

29.     Maxim was forced to find a replacement protein to supply to its customer in lieu of the WPI90 that Defendants were to have agglomerated.

30.     Maxim was able to find an inferior protein to send to its customer, but for which it had to pay $152,028.23, resulting in an additional $9,375.53 in certain damages and an amount of damages yet to be ascertained due to the use of an inferior quality WPI.

31.     Upon information and belief, Defendants' actions were wanton and willful, and designed to derive profit from the unlawful conversion of the high quality WPI90 entrusted to it by Maxim.

## COUNT I – Breach of Contract

32.     Maxim incorporates by reference the allegations of paragraphs 1 through 31 of the Complaint as if fully set forth herein.

33.     On or about November 17, 2008, Maxim entered into a valid contract with Defendants for the agglomeration of WPI90, the terms of which limited the amount WPI90 that Defendants could lose during processing.

34.     Defendants breached the November 17, 2008 contract by shipping to Maxim less than the agreed upon amount of WPI90.

35.     Maxim was damaged by said breach.

36.     On or about December 29, 2008, Maxim entered into a valid contract with Defendants for the agglomeration of WPC, the terms of which implicitly required Defendants to ship usable agglomerated WPC to Maxim.

37.     Defendants breached the December 29, 2008 contract by failing to provide Maxim with usable agglomerated WPC.

38.     Maxim was damaged by said breach.

39.     On or about April 20, 2009, Maxim entered into a valid contract with Defendants for the agglomeration of WPI90.

40.     Defendants breached the April 20, 2009 contract by failing to agglomerate the designated WPI90, and/or by failing to ship the agglomerated WPI90 to Maxim.

41.     Maxim was damaged by said breach.

### COUNT II – Conversion

42.     Maxim incorporates by reference the allegations of paragraphs 1 through 31 of the Complaint as if fully set forth herein.

43.     Maxim was the lawful owner of approximately 41,270 pounds of WPI90 shipped to directly Defendants on or about April 22, 2009.

44.     Defendants took possession of the aforementioned WPI90 with the intent to exercise some control over the same.

45.     Defendants thereby deprived Maxim of the right to possess the aforementioned WPI90.

46.     Defendants' conduct was outrageous because of its evil motive or reckless indifference to the rights of others.

47.     Maxim was damaged by the acts of Defendants.

## COUNT III – Unjust Enrichment

48.     Maxim incorporates by reference the allegations of paragraphs 1 through 46 of the Complaint as if fully set forth herein.

49.     Maxim made payments to Defendants by way of deductions taken unilaterally by Defendants from moneys owed to Maxim for agglomeration services that were to be provided by Defendants.

50.     The agglomeration services were not completed, yet Defendants have had the use and enjoyment of the Maxim's funds.

51.     Because Defendants did not complete the agglomeration services, it is unjust for Defendants to retain the benefit of the Maxim's funds.

52.     Maxim has been damaged by Defendants' failure to complete the agglomeration services.

## COUNT IV – Money Had and Received

53.     Maxim incorporates by reference the allegations of paragraphs 1 through 51 of the Complaint as if fully set forth herein.

54.     Defendants obtained Maxim's money based solely upon the understanding that Defendants would provide and complete agglomeration services for Maxim.

55.     Defendants received a benefit by receipt of the Maxim's funds.

56.     Defendants failed to provide the agglomeration services requested by Maxim.

57.     Maxim made demand for return of the funds and of the WPI90 that was to be agglomerated when Defendants failed to fully perform.

58.     Defendants have failed and refused to return any funds or product to Maxim.

WHEREFORE Maxim prays that this Court enter judgment in its favor and against defendants and respectfully requests the following:

a.   an order awarding Maxim actual damages in an the amount of $187,834.06;

b.   punitive and/or exemplary damages;

c.   special damages;

d.   attorneys fees, expenses, and costs;

e.   pre-judgment and post-judgment interest; and

f.   such other and further relief as the Court deems just and proper.

Respectfully submitted,

By: /s/ Matthew A. Rosenberg
Matthew A. Rosenberg, #69792
LAW OFFICES OF MATTHEW ROSENBERG, LLC
36 Four Seasons Ctr., #116
St. Louis, MO 63017
(314) 256-9699
(314) 786-0532 Fax

Nicole S. Zellweger, #507020
STINSON MORRISON HECKER, LLP
168 N. Meramec Ave., #400
St. Louis, MO 63105
(314) 863-0800
(314) 259-3982 Fax

*Attorneys for Plaintiff*